**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Leland Royster, Jr., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 24-CV-7253 |
| v. ) | |
| ) | Honorable Joan B. Gottschall |
| City of Markham, Illinois, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Leland Royster, Jr., a self-represented litigant, brings Fourth Amendment and due process claims under 42 U.S.C. § 1983 against the City of Markham, Illinois ("the City"). Royster's claims arise out of his arrest on September 9, 2021, and subsequent prosecution for a firearm offense to which he pleaded guilty. *See, e.g.,* Proposed Second Am. Compl. 3, Dkt. No. 73. Two related motions are before the court. The City moves to dismiss Royster's First Amended Complaint for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). Mot. to Dismiss, Dkt. No. 59. Royster has also filed a motion for leave to file a Second Amended Complaint, which he attached to his motion. *See* Proposed Second Am. Compl., Dkt. No. 73. For the following reasons, the court grants the City's motion to dismiss, stays discovery, and gives Royster until and including September 3, 2025, to file an amended complaint pleading a valid basis for imposing vicarious liability upon the City under *Monell v. Department of Social Services of New York City*, 436 U.S. 658 (1978).

### I. BACKGROUND

Royster filed his original complaint against the City in the Circuit Court of Cook County, Illinois. *See* Original Compl. 12–13, Dkt. No. 1-1. The City removed the case to this federal court because Royster's § 1983 constitutional claims arose under federal law. *See* 28 U.S.C. § 1441(a), § 1331; Notice of Removal 2–3, Dkt. No. 1.

Following removal, the City moved to dismiss Royster's original complaint for failure to state a claim. Dkt. No. 37. The parties briefed the City's motion, and Royster later sought and obtained leave to file his First Amended Complaint on February 25, 2025. Dkt. No. 52. This court denied as moot the City's motion to dismiss the original complaint. Min. Order 1 (Mar. 25, 2025), Dkt. No. 60.

Briefing on the City's motion to dismiss the First Amended Complaint concluded with the City's reply memorandum filed May 2, 2025. Dkt. No. 64. Twenty days later, Royster filed a motion asking the court for leave to file a Second Amended Complaint. Dkt. No. 65 (May 22, 2025). This court denied Royster's motion without prejudice and instructed him to submit a copy of his proposed Second Amended Complaint with any renewed motion. *See* Minute Orders of May 27 and June 9, 2025, Dkt. Nos. 66, 72. Royster filed his proposed Second Amended Complaint on June 11, 2025. Dkt. No. 73. Royster's motion for leave to file a Second Amended Complaint has been fully briefed. The City argues that the proposed Second Amended Complaint does not cure the alleged defects in the First Amended Complaint, so allowing Royster to file it would be futile.

The facts alleged in the First and proposed Second Amended Complaints are materially identical. *Compare* Dkt. No. 52, *with* Dkt. No. 73. For purposes of resolving the present motions challenging the sufficiency of Royster's complaints, the court accepts the following facts as true and draws all reasonable inferences from them in Royster's favor. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Nowlin v. Pritzker*, 34 F.4th 629, 636 (7th Cir. 2022).

The story narrated in the complaints begins on September 9, 2021, with Royster's encounter with his former coworker, Courtney Yeager. *See* Proposed Second Am. Compl. 3. Yeager served as a City of Markham police officer at some time in the past. *See id.* At Yeager's request, Royster drove to Yeager's home in Markham to return unspecified property. *See id.* Yeager allegedly attacked Royster as he turned to leave. *See id.* Yeager "continued to attack" Royster, who ran to his vehicle but was unable to enter it for reasons not made clear in the complaints. *See id.*

2

Royster asked a neighbor to call the police. *See id.* The police officers who arrived fist-bumped Yeager, their former colleague; allowed him to return to his home; and focused their attention on Royster. *See id.* They confiscated his gun, told him to follow them to a police station, and searched him. *See id.* At the police station, the officers interrogated Royster "about what [he did] for a living" and subsequently read him his *Miranda* rights. *See id.*

Royster was arrested. *See id.* He became "so distressed" as a result of his arrest that he had a stroke, though it is unclear how long after his arrest this occurred. *See id.* The complaints contain no allegations of failure to meet Royster's medical needs before, during, or after his stroke. *See id.* Construing his complaints liberally, Royster alleges that the officers who came to Yeager's home lacked probable cause to search and arrest him for assault, that racial profiling occurred (Royster's race is not alleged), and that he pleaded guilty and received two years' probation plus a fine. *See id.* at 2–3.

The City attached to its motion to dismiss an indictment dated October 26, 2021, charging Royster with aggravated unlawful use of a weapon on September 9, 2021.[1] Specifically, the grand jury alleged that Royster carried a concealed weapon without a license. *See* Mot. to Dismiss Ex. 1, Dkt. No. 59-1. Royster pleaded guilty to this charge, according to his complaints. He proposes to plead in his Second Amended Complaint, "I was told by my attorney if I did'nt except [sic] this plea I was going to get 6yrs in jail." Proposed Second Am. Compl. 2.

Discovery continued while the parties briefed the pending motions. The City recently filed a motion to stay the September 1, 2025, deadline to complete discovery until the court rules on its motion to dismiss the First Amended Complaint. Dkt. No. 80

## II. MOTION STANDARDS

The City's Rule 12(b)(6) motion to dismiss for failure to state a claim tests the sufficiency of Royster's First Amended Complaint, as contrasted with the case's merits or the

---

[1] The court takes judicial notice of the date and nature of the allegations in the indictment without converting the City's motion to dismiss into a summary judgment motion. *See* Fed. R. Evid. 201; Fed. R. Civ. 12(d); *Beam v. Gonzales*, 548 F. Supp. 2d 596, 601 (N.D. Ill. 2008).

3

merits of any affirmative defense. *See Richards v. Mitcheff*, 696 F.3d 635, 637–38 (7th Cir. 2012). Royster has moved for leave to file his Second Amended Complaint. Under Rule 15(a)(2), leave to amend a pleading, such as a complaint, should be freely given "when justice so requires." However, leave to amend may properly be denied on several grounds, including futility of the amendment. *See, e.g., Nowlin*, *supra*, 34 F.4th at 635; *Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 524 (7th Cir. 2015). The court must "apply the legal sufficiency standard of Rule 12(b)(6) to determine whether the proposed amended complaint fails to state a claim." *Nowlin,* 34 F.4th at 635.

Royster's First and proposed Second Amended Complaints need not be analyzed separately because the proposed Second Amended Complaint repeats and adds to the claims and factual allegations of the First Amended Complaint. *Compare* Dkt. No. 52 *with* Dkt. No. 73. The court therefore resolves both pending motions by applying the Rule 12(b)(6) standard to Royster's proposed Second Amended Complaint.

Federal Rule of Civil Procedure 8(a)(2) requires every complaint, and every other pleading that states a claim for relief, to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." To withstand a Rule 12(b)(6) motion, a complaint must "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim satisfies this standard when its factual allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555–56. When testing a complaint's sufficiency, the court accepts the complaint's well-pleaded facts as true and draws reasonable inferences from those facts in the plaintiff's favor, but conclusory allegations that merely recite the elements of a claim do not enjoy a presumption of truth. *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).

### III. ANALYSIS

To begin, the City correctly argues that Royster's complaints do not plead a plausible racial profiling claim. *See Sow v. Fortville Police Dep't*, 636 F.3d 293, 303 (7th Cir. 2011)

4

(citing *Chavez v. Ill. State Police*, 251 F.3d 612, 635 (7th Cir. 2001)). To state an Equal Protection claim for racial profiling, Royster must plausibly allege that the officers who arrested and questioned him were "motivated by a discriminatory purpose." *Id.* (quoting *Chavez*, 251 F.3d at 635–36). Royster's complaints include no facts from which intentional or any discriminatory enforcement can be inferred. He does not plead his own race or national origin, and he does not explain at all how race played a part in any action taken by law enforcement. This is insufficient to state a claim. *See id.*

Royster also pleads a due process claim, but he alleges no violation of the procedural component of the Fourteenth Amendment's Due Process Clause, such as insufficient notice and an opportunity to be heard. He instead contends that the officers who arrested and searched him violated his substantive due process rights. *See* Proposed Second Am. Compl. 3. The Supreme Court has held: "Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)). Since Royster bases his due process claim on the search and seizure he challenges under the Fourth Amendment, "There is no need to differentiate between" the two claims "because they are coextensive." *Kernats v. O'Sullivan*, 35 F.3d 1171, 1182 (7th Cir. 1994) (quoting *Oliver*, 510 U.S. at 309 (Stevens, J., dissenting)). Like the plaintiff in *Tesch v. County of Green Lake*, Royster "cannot use a substantive due process claim to circumvent the standards appropriate under the Fourth Amendment if his claim is 'covered by' the Fourth Amendment." 157 F.3d 465, 473 (7th Cir. 1998) (citing *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997)). Consistent with the foregoing authorities, Royster's substantive due process claim is dismissed.

The Fourth Amendment protects the right of the people to be free from unreasonable "searches" and "seizures." "To state a claim under the Fourth Amendment, a plaintiff must show that a search or seizure occurred and that the search or seizure was unreasonable." *Hess v. Garcia*, 72 F.4th 753, 761 (7th Cir. 2023) (citing *Carlson v. Bukovic*, 621 F.3d 610, 618 (7th Cir.

2010)). "[T]he arrest of a person is quintessentially a seizure" under the Fourth Amendment. *Torres v. Madrid*, 592 U.S. 306, 312 (2021) (quoting *Payton v. New York*, 445 U.S. 573, 585 (1980)).

The City concedes that its officers arrested Royster, but it argues that the arrest occurred after Royster arrived at the police station rather than at Yeager's home. The timing matters because Royster was not charged with assaulting Yeager but rather with a firearm offense based on evidence the officers discovered after he arrived at the Markham police station. Royster alleges that the officers lacked probable cause to arrest him for assault at Yeager's home. Whether, and if so when, a Fourth Amendment seizure occurred depends on whether, under the totality of the circumstances, a reasonable person would have believed that he was not free to leave. *United States v. Mendenhall*, 446 U.S. 544, 554 (1980) (footnote omitted). Depending on the context, courts have found that a Fourth Amendment seizure occurs when a law enforcement officer instructs a suspect or witness to follow the officer to a police station for questioning. *Contrast Florida v. Royer*, 460 U.S. 491, 502–04 (1983) (plurality op.) (holding that a seizure occurred); *id.* at 510–11 (Brennan, J., concurring in the judgment); *Dunaway v. New York*, 442 U.S. 200, 207–16 (1979) (same), *with United States v. Drayton*, 536 U.S. 194, 205–07 (2002); *DeLuna v. City of Rockford*, 447 F.3d 1008, 1014–15 (7th Cir. 2006).

Particularly given the fact-intensive inquiry involved, Royster's complaints plead a plausible claim that a reasonable person would not have felt free to leave rather than follow the officers to the Markham police station so they could "ask [him] some questions." Proposed Second Am. Compl. 3. Thus, the complaints plead adequately that Royster was arrested for assault but was charged with and pleaded guilty to a firearm offense.[2]

---

2. The City argues that Royster's original complaint judicially admits that he was not arrested until he was taken to the police station. The court does not so read the original complaint. Even if it did, the original complaint, which is unsworn, does not tie Royster's hands. An amended pleading supersedes the original pleading, and facts not incorporated into the amended pleading are considered *functus officio*, a Latin phrase meaning, roughly, of no further legal effect. *Kelley v. Crosfield Catalysts*, 135 F.3d 1202, 1205 (7th Cir. 1998) (citations omitted). The original complaint's allegations may not be considered when analyzing subsequent complaints under the Rule 12(b)(6) standard. *See id.*

Having so ruled, the court turns to the City's two arguments in support of dismissing Royster's Fourth Amendment claims. The City first raises the affirmative defense of collateral estoppel, contending that Royster's guilty plea precludes him from arguing that the officers who arrested him lacked probable cause. Mot. to Dismiss 5. Second, the City contends that the two-year statute of limitations bars his claims. Mot. to Dismiss 7–8.

**A. Issue Preclusion (Collateral Estoppel)**

"Under the doctrine of collateral estoppel, also known as issue preclusion, an issue cannot be litigated a second time between the same parties when it has already 'been determined by a valid and final judgment.'" *Patrick v. City of Chicago*, 81 F.4th 730, 735–36 (7th Cir. 2023) (citing *Riley v. Calloway*, 882 F.3d 738, 742 (7th Cir. 2018)). Defendant City bears the burden of raising the affirmative defense of issue preclusion and showing that it is applicable on the face of the complaint. *See id.* at 736 (citing *McDonald v. Adamson*, 840 F.3d 343, 347 (7th Cir. 2016)). The City must establish the following elements:

> (1) the issue sought to be precluded must be the same as that involved in the prior action;
>
> (2) the issue must have been actually litigated;
>
> (3) the determination of the issue must have been essential to the final judgment;
>
> (4) the party against whom estoppel is invoked must [have been] fully represented in the prior action.

*Waagner v. United States*, 971 F.3d 647, 657 (7th Cir. 2020) (quotation omitted).

The City cites *Currier v. Baldridge*, 914 F.2d 993 (7th Cir. 1990), to support its argument that Royster's guilty plea collaterally estops him from arguing in this lawsuit that City police officers lacked probable cause to arrest him. But the *Currier* opinion is to the contrary. The *Currier* court states: "A plaintiff's . . . conviction collaterally estops the plaintiff from reasserting

a lack of probable cause." *Id.* at 996 (citing *Allen v. McCurry*, 449 U.S. 90, 101 (1980)). But as *Currier* makes clear, this rule applies only where the § 1983 plaintiff was arrested for, and convicted of, like offenses. *See id.* Indeed, the *Currier* court drew this distinction expressly when discussing Currier's arrest: "Currier was initially arrested for his attempt to serve legal papers on Officer Baldridge, but Currier was only convicted for his disorderly conduct after his arrest." *Id.* The Seventh Circuit held that collateral estoppel did not apply because of the mismatch between the offenses of arrest and conviction, holding that the plea "does not collaterally estop Currier from asserting that officers arrested him without probable cause for assault." *Id.* The reason is that the issue of probable cause for the offense of arrest was not actually litigated in the state criminal case. *See id.*; *Patrick,* 81 F.4th at 736.

A similar analysis applies to the case at hand. As explained above, Royster plausibly alleges in his complaints that he was arrested for assaulting Yeager, but he entered a guilty plea to a firearm offense unrelated to the assault. As in *Currier*, Royster's guilty plea does not prevent him from challenging probable cause for his arrest for assault.

**B. Statute of Limitations**

Defendant City bears the burden to plead and prove the affirmative defense that the statute of limitations bars Royster's claims. *See* Fed. R. Civ. P. 8(c)(1). Complaints need not anticipate defenses and attempt to defeat them. *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012) (citing *Gomez v. Toledo*, 446 U.S. 635 (1980)). Nevertheless, a complaint may be dismissed on statute of limitations grounds at the Rule 12(b)(6) stage, but "only when a plaintiff's allegations clearly establish that the claims are untimely." *Cielak v. Nicolet Union High Sch. Dist.*, 112 F.4th 472, 477 (7th Cir. 2024) (citing *Milchtein v. Milwaukee Cnty.*, 42 F.4th 814, 822 (7th Cir. 2022)). Some judicial opinions describe this situation—where a complaint admits all the elements of an affirmative defense—as one in which the plaintiff has "pleaded himself out of court." *E.g.*, *Holmes v. Marion Cnty. Sheriff's Off.*, 141 F.4th 818, 822 (7th Cir. 2025); *Richards*, 696 F.3d at 637.

8

Section 1983 does not come with a built-in statute of limitations, so courts "borrow the statute of limitations for personal injury actions in the state in which the cause of action arose," Illinois in this case. *See Cielak*, 112 F.4th at 477 (citing *Wallace v. Kato*, 549 U.S. 384, 387 (2007)); *see also Talevski ex rel. Talevski v. Health & Hosp. Corp. of Marion Cnty.*, 6 F.4th 713, 722 (7th Cir. 2021), aff'd sub nom. *Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166 (2023). Illinois' two-year statute of limitations for personal injury claims applies to Royster's § 1983 claims. *E.g.*, *Lewis v. City of Chicago*, 914 F.3d 472, 478 (7th Cir. 2019) (citing 735 Ill. Comp. Stat. 5/13-202 and *Wallace*, 549 U.S. at 388–89).

Royster's original complaint, filed in state court, is dated May 20, 2024. *See* Notice of Removal Ex. A at 12, Dkt. No. 1-1. Royster alleges in his complaints that he was arrested more than two years before that date on September 9, 2021. *See* Proposed Second Am. Compl. 3, Dkt. No. 73. Thus, the statute of limitations bars Royster's claims if the two-year limitations clock started to run on September 9, 2021, the date of Royster's arrest.

The present record lacks key information the court needs to determine when the two-year limitations period commenced. Although state law supplies the length of the limitations period, federal law "determines when a § 1983 claim accrues," that is, the date on which the limitations period (two years here) starts. *See Lewis*, 914 F.3d at 478 (citing *Wallace*, 549 U.S. at 388–89). Determining the accrual date of a § 1983 claim like Royster's often entails "a fact-intensive inquiry 'in which both the surrounding circumstances and the claims plaintiff himself is trying to raise are critical.'" *Reilly v. Will Cnty. Sheriff's Off.*, 2025 WL 1874629, at *4 (7th Cir. July 8, 2025) (quoting *Hileman v. Maze*, 367 F.3d 694, 697 (7th Cir. 2004)). Construing Royster's complaints favorably to him, he pleads a Fourth Amendment rights violation stemming from his September 9, 2021, arrest, subsequent pretrial detention, and the criminal charge against him. *See* Proposed Second Am. Compl. 3. The complaints list no date other than Royster's arrest date. *See id.* Neither does he plead the charge for which he was arrested; it is reasonable to infer that he was charged with assaulting Yeager. *See id.* The court does not know how long Royster's pretrial detention lasted, whether he was in custody until he pleaded guilty, or when he

pleaded guilty. *See id.* These dates must be known to conduct an accrual analysis because a Fourth Amendment claim for unreasonable pretrial detention, such as Royster's, "accrues when the detention ends." *Manuel v. City of Joliet*, 903 F.3d 667, 670 (7th Cir. 2018). Since Royster's complaints do not say when his pretrial detention ended, he has not pleaded himself out of court by including everything necessary to sustain the City's statute of limitations defense. *See Mitchell v. City of Elgin*, 912 F.3d 1012, 1017 (7th Cir. 2019). Because the record is insufficiently developed, this court rejects the City's arguments for a statute of limitations dismissal predicated on Royster's First and proposed Second Amended Complaints.

**C. Municipal Liability**

Royster brings his constitutional claims under 42 U.S.C. § 1983, which grants private plaintiffs the right to bring a claim for money damages against a "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." He has consistently named the City of Markham as the sole defendant. He does not name, nor does he propose to name, any police officer involved in his arrest, questioning, or prosecution. *See* First Am. Compl. 1; Proposed Second Am. Compl. 3.

Section 1983 does not impose vicarious liability on the City solely because it employed the officers involved, even if they were acting in the course and scope of their employment when the alleged constitutional violations occurred. *Monell v. Dep't of Soc. Servs. of New York City*, 436 U.S. 658, 692 (1978). The Supreme Court in *Monell* rejected *respondeat superior* liability and held that "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694; *see Bd. Of Bryan Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404–05 (1997).

To hold a municipality like the City of Markham liable under *Monell*, a plaintiff must identify an official policy or custom that was the "moving force" behind the constitutional violation. *Brown*, 520 U.S. at 404. Municipal liability may be established in one of three ways: "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Bohanon v. City of Indianapolis*, 46 F.4th 669, 675 (7th Cir. 2022) (quoting *Spiegel v. McClintic*, 916 F.3d 611, 617 (7th Cir. 2019)). Inaction may also support liability under *Monell* if it reflects the municipality's "conscious decision not to take action." *Id.* (quoting *Glisson v. Ind. Dep't of Corr.*, 849 F.3d 372, 381 (7th Cir. 2017)).

Royster makes no effort to plead the requisites for *Monell* liability. Nowhere in his original Complaint, First Amended Complaint, or proposed Second Amended Complaint does he identify any official policy, custom, or practice of the City that was the moving force behind the constitutional violations he alleges. This defect is fatal, independently requiring dismissal of the First Amended Complaint for failure to state a claim and a finding that filing the proposed Second Amended Complaint would be futile.

Although the City does not move to dismiss under *Monell*, a district court may dismiss an action on its own motion for failure to state a claim, provided the parties are given notice of the court's intention and an opportunity to respond. *Ricketts v. Midwest Nat'l Bank*, 874 F.2d 1177, 1183–84 (7th Cir. 1989) (internal quotation omitted); *see Lamon v. Sandidge*, 232 F. App'x 592, 593–94 (7th Cir. 2007). To avoid another round of briefing on another proposed amended complaint, the court dismisses the First Amended Complaint, denies leave to file the proposed Second Amended Complaint, and gives Royster an opportunity to file another amended complaint pleading, if he can, a basis for imposing liability under *Monell*.

## IV. CONCLUSION

For the reasons stated, the City's motion to dismiss the First Amended Complaint is granted, and Plaintiff's motion for leave to file his proposed Second Amended Complaint is denied as futile. Plaintiff has until and including September 3, 2025, to file an amended complaint, if he wishes to do so.

The City's motion to stay discovery pending the ruling in this order is denied as moot. Given Royster's failure to plead a plausible *Monell* claim against the City (or, alternatively, to sue the individual officers), the court *sua sponte* stays discovery.

It is clear from Royster's complaints and filings that he is either overwhelmed by or unprepared to address the complex and technical legal and factual issues his case raises. Royster has never indicated that he wants to hire an attorney. This court has repeatedly advised Royster of the availability of the pro se helpdesk staffed by volunteer attorneys. He is again encouraged to make an appointment, particularly given that if he does not file a legally sufficient amended complaint by the deadline set in this order, he is likely to lose his case. If Royster needs additional time because he has made a helpdesk appointment, or for any other valid reason, he may request a deadline extension by filing a motion explaining why the extension is requested and telling the court how much time he needs. *See* Fed. R. Civ. P. 6(b)(1).

Date: August 1, 2025 /s/ Joan B. Gottschall  
United States District Judge